Judge Mills
delivered the opinion of the court.
Daniel Halstead exhibited his bill in the court below, praying an injunction and relief against a note of five hundred dollars, executed by him to Noble and Bywaters, who had passed or transferred it to David Todd, who had endorsed it to Bowman, one of the appellants, who had obtained a judgment at law thereon. The equity set forth in his bill as grounds of relief, is, that he had had other transactions with Noble and Bywaters, the original obligees—that he had lent them his notes for $6000, which had been negotiated with or transferred to the bank of Kentucky, and had also endorsed for Noble other notes, which had been negotiated likewise—that, to indemnify him against these engagements for them, they had pledged or mortgaged to him other demands and a tract of land—that what was pledged was not a sufficient indemnity—that the land was depreciated in value—that Noble and Bywaters were wholly and hopelessly insolvent, and that in all probability he should have to pay the lent notes, and make good his endorsements for them, without remuneration, unless he could be relieved from the payment of the note in question.
The defendant, Noble, in answer taken and filed for himself and partner. Bywaters, confesses the assignment of the note in question, and the loan of the notes for $6000 *201 and other endorsements of Halstead for him. The answer of Bowman denies any knowledge of the alledged equity—claims to be an innocent holder or purchaser of the note now in contest—avers the consent of Halstead to its transfer and his subsequent promises to pay it, and calls on Halstead to respond to these averments, who denies them. It appears by a writing exhibited between Halstead and Noble and Bywaters, that he had really lent them his notes for $6000. And it is in proof, that since the commencement of this suit, Halstead has paid some money for Noble, perhaps more than the contested note: that Noble is insolvent;—but there is no proof that Bywaters is so—indeed, the proof of one witness is, that he is solvent. On this state of the case, the court below perpetuated the injunction with costs; to reverse which decree, the defendants in that court have prosecuted their appeal.
An obligor cannot set up an equity arising from a transaction distinct from that for which the note was given after notice of the assignment.
Halstead, in his bill, sets up no equity arising from the transaction on which the note is founded; nor does he attempt, in his bill, to impeach or invalidate its consideration, and the proof renders it evident that it was founded on a consideration entirely distinct from the loaned and endorsed notes. Halstead had not, at the date of filing his bill, and of course not at the time of notice of the assignment to Bowman, paid one cent on his engagements for Noble and Bywaters, which could attach to the note in question as a discount while it remained in the hands of Noble and Bywaters; but only alledges the danger of being compelled to do so, which turned out to be the case as this suit progressed. The main question, therefore, is—could Halstead avail himself of these partial payments, and danger of payments still more weighty, arising out of other transactions unconnected with the note, so as to discount them against the note in the hands of Bowman, the assignee? The act of assembly regulating the assignment of bonds and other writings, (2 Lit. 75) declares notes to be assignable, and vests not only the legal right of, but the remedies on, such papers in the assignee, but by one proviso, declares “that the defendant shall be allowed all discounts under the rules and regulations prescribed by law, he can prove at the trial, either against the plaintiff of the original obligee or payee, before notice of the assignment" And a second proviso declares, “that nothing in this act contained shall be so construed, as to change the nature of the defence either in law or equity, that any defendant of *202 defendant or defendants may have against an assignee or assignees, or original assignor or assignors." On the true construction of these clauses it is conceived the event of this suit materially depends. Did the legislature intend that only those defences which attached to the note against the assignor while it remained in his hands should pass with the note on its assignment, and that the assignee should hold it clear of future contingencies arising from other transactions between the assignor and obligor; or did they design that such contingencies, resulting after the assignment, should follow the note and reach it in the hands of the assignee? As to discounts, this question presents no difficulty. Only such as can be proved to exist, and have actually accrued, before notice of the assignment can follow the note, by the terms of the act. But on the second proviso the question presents itself in an attitude somewhat more formidable. Does a defence either at law or equity, which a defendant can prove to exist at the trial against an assignor, but which did not exist at the notice of assignment, attach itself to, and discharge a note? The court conceives this question must be answered in the negative. By common law such papers were not assignable. This was an inconvenience to society, which the legislature determined to remove by the act in question. But while they did so, they seemed determined by the last proviso to guard against another evil, which might be equally mischievous, that is, the avoidance by the negotiation of the paper of an existing available defence against the note previous to its assignment. Such defences by the statute must pass and follow note; while the rights of the assignee are equally regarded by the legislature, and he must be allowed to hold the note free of future contingencies between the obligor and obligee, arising out of transactions dehors the note.—According to these principles, then, existing discounts before notice of the assignment arising from other transactions, and any defence at law or equity before such notice, or which go to affect its consideration, can and does follow the note, while the assignee is allowed to hold the paper discharged from defences of a different character. Testing the claims of Halstead to relief by these principles, it is evident the decree in his favor is erroneous. He had not, even at the date of filing his bill, any existing discount. He does not complain of or attempt to impeach in his bill the consideration of the note, but only sets up danger of *203 suffering from other transactions wholly unconnected with the note in question which eventuated partially as his suit progressed, and on account of which the court has relieved him at the expense of the previously vested rights of Bowman. It is, therefore, decreed and ordered that the decree of the court below be, and the same is hereby reversed with costs, and the cause is remanded to the court below, with directions to that court to enter up a decree dissolving the complainant’s injunction with the damages imposed by law, and dismissing his bill with costs.
While all available defences which existed at the a time of the assignment of a note attach to the note, and follow it in the hands of the assignee holds the note exempt from all contingencies which arise dehors the note between obligor and assignor after notice of assignment.
Wickliffe for appellant, Haggin for appellee.